IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARK A. DRAZIC,<br><br>    Plaintiff,<br><br>  v.<br><br>NCR CORPORATION,<br><br>    Defendant. | 8:19CV511<br><br><br>MEMORANDUM<br>AND ORDER |

   This matter is before the Court on defendant NCR Corporation's ("NCR") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (or, in the alternative, Federal Rule of Civil Procedure 56) and Compel Arbitration (Filing No. 5) under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Alternatively, NCR requests the Court stay this case pending arbitration. For the reasons stated below, the motion to compel arbitration is granted and this case is stayed pending arbitration.

**I.  BACKGROUND**

  **A.  Factual Background**

   NCR is a global technology company. NCR employed plaintiff Mark A. Drazic ("Drazic") as a software engineer from December 2, 2002, to April 17, 2018, when NCR terminated his employment.

   On April 3, 2005, Drazic signed a Mutual Agreement to Arbitrate Claims (Filing No. 7-1) for his job ("Agreement"). The Agreement lists Drazic's employer as Retalix USA ("Retalix"). The Agreement is not signed by a Retalix representative. NCR alleges it is Retalix's corporate successor.

   The Agreement provides

The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them.

The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability); claims for benefits (except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled "Claims Not Covered by the Agreement."

The Agreement further states either party may enforce it in court. In the Agreement, Drazic agreed

> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT; THAT I UNDERSTAND ITS TERMS; THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT; AND THAT I HAVE ENTERED INTO THE AGREEMENT AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF. I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

**B.     This Case**

On October 15, 2019, Drazic sued NCR in the District Court of Douglas County, Nebraska, asserting various claims for employment discrimination and retaliation under (1) the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, (2) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*, and (3) the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1101 *et seq.*  NCR removed (Filing No. 1), *see* 28 U.S.C. §§ 1441 and 1446, the case to this Court, alleging federal-question jurisdiction over Drazic's ADEA and Title VII claims, *see id.* § 1331, and supplemental jurisdiction over Drazic's NFEPA claims, *see id.* § 1367(a).

NCR then filed the present motion requesting the Court compel arbitration under the Agreement and dismiss (or alternatively, stay) this action.  In support of its motion, NCR submitted as an exhibit the Agreement and asserted NCR is Retalix's corporate successor and entitled to enforce the Agreement.

Drazic resists the present motion.  In his opposition brief, Drazic does not deny he signed the Agreement.  But despite alleging in his Complaint he worked for NCR since 2002 and not disputing he signed the Agreement in 2005, Drazic questions whether NCR has produced sufficient evidence that it is Retalix's corporate successor.  Drazic notes NCR failed to properly authenticate the Agreement, *see* NECivR 7.1(a)(2), or provide evidence that NCR is Retalix's corporate successor with its original brief.  Drazic also requests the Court not convert NCR's motion into one for summary judgment, *see* Fed. R. Civ. P. 12(d), because that would deprive him an opportunity "to obtain and present evidence pertinent to the motion."

In response, NCR submitted an index of evidence (Filing No. 11-1) with (1) an affidavit of NCR's Law Vice President and Chief Corporate Counsel declaring (a) NCR kept the Agreement in the course of regular business and Drazic signed the Agreement, (b) Retalix and NCR merged and publicly filed the Articles of Merger with the Maryland Secretary of State, and (c) NCR was the surviving entity of the merger and became Drazic's employer afterward; (2) another copy of the Agreement; and (3) the Articles of Merger and materials from the Maryland Secretary of State documenting the merger.

The Court gave Drazic a chance to respond to that evidence by April 7, 2020, if he chose to do so (Filing No. 15). The Court directed Drazic to state specifically what discovery and additional information would be pertinent to the present motion and "the issue of whether NCR is Retalix's corporate successor." Drazic did not respond. Accordingly, this matter is ripe for decision.

II.  **DISCUSSION**
   A.  **Standard of Review**

"Rule 12(b)(6) or Rule 56 motions are the appropriate means for parties seeking to compel arbitration." *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018). "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If the Court converts the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

Here, Drazic did not attach the Agreement to his Complaint. NCR submitted the Agreement with its original brief and then the additional evidence discussed above. Drazic did not act on his opportunity to present further material on the present motion and to explain how converting the motion under Rule 12(d) would prejudice him. Accordingly, the Court will consider the materials "outside of pleadings," Fed. R. Civ. P. 12(d), and apply the standard of review under Rule 56 for motions for summary judgment.

4

Under Rule 56, the Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court views the evidence in the light most favorable to the nonmoving party and affords them all reasonable inferences. *Estate of Barnwell*, 880 F.3d 998, 1004 (8th Cir. 2018).

The moving party "bears the initial burden to 'bring up the fact that the record does not contain' a genuine dispute of material fact 'and to identify that part of the record which bears out his assertion.'" *Moore v. Martin*, 854 F.3d 1021, 1025 (8th Cir. 2017) (quoting *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988)). Then the nonmoving party must "set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue." *Id.* (quoting *Counts*, 862 F.2d at 1339).

### B. The Right to Compel Arbitration

Section 4 of the FAA provides "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." The FAA establishes a "federal policy favoring arbitration," requiring courts to "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The primary purpose of the FAA "is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

"A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008). "Arbitration is a matter of contract law, and favored status notwithstanding, parties cannot be compelled to arbitrate unless they have contractually agreed to be bound by arbitration." *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019). The Court must "give effect to the contractual rights and

expectations of the parties." *Stolt-Nielsen*, 559 U.S. at 682 (quoting *Volt*, 489 U.S. at 479).

### 1. Valid Arbitration Agreement

In reviewing a petition to compel arbitration, the Court must first decide "whether there is a valid arbitration agreement." *Robinson v. ERO-ARK, LLC*, 841 F.3d 781, 783 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)). "Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is [part of this] threshold question of arbitrability." *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014).

"[W]hen deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009) (quoting *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007)) (alterations in original). In other words, "state contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants." *Id.*

Here, the parties agree Nebraska law governs that threshold question. To create a contract under Nebraska law there must be (1) an offer, (2) an acceptance, and (3) "a meeting of the minds or a binding mutual understanding between the parties to the contract." *Gibbons Ranches, LLC v. Bailey*, 857 N.W.2d 808, 812 (Neb. 2015).

NCR asserts "offer and acceptance are evidenced by the written Agreement" signed by Drazic. NCR further contends the Agreement shows a meeting of the minds because "it contains promises both by [Retalix] and [Drazic] to resolve their disputes through binding arbitration." Because the Agreement makes clear it applies to Retalix's successors, NCR argues it can enforce it.

6

The parties note no Nebraska state court has considered whether a nonsignatory corporate successor may enforce an arbitration agreement (and the Court has found no authority to the contrary). But this Court considered that question under similar circumstances in *Arctic Glacier U.S.A., Inc. v. Principal Life Insurance Co.*, 8:17CV214, 2017 WL 3700887 (D. Neb. Aug. 24, 2017). In that case, the plaintiffs petitioned the Court to compel arbitration pursuant to an arbitration agreement between the defendant and a company the plaintiffs claimed was their corporate predecessor. *Id.* at *1. Like here, the plaintiffs were not signatories but argued they were "nonetheless entitled to enforce" the arbitration agreement because the arbitration agreement included a provision binding corporate successors. *Id.*

The plaintiffs submitted evidence, such as a sworn declaration and a written Asset Purchase Agreement showing they purchased all the assets and assumed all the liability of the signatory company, to show they were the corporate successor. *Id.* at *3-4. The defendant failed to persuasively refute that evidence, and the Court concluded the "uncontested evidence" showed the plaintiffs were the signatory's corporate successor.

The Court found Nebraska law generally follows the "traditional principles" of state law which allow nonparties to enforce a contract (or have a contract enforced against them) through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001); *see also Earl v. Priority Key Servs., Inc.*, 441 N.W.2d 610, 613 (Neb. 1989) (dealing with corporate-successor liability). The Court concluded the plaintiffs could enforce the arbitration agreement based on those principles along with other persuasive authorities recognizing corporate successors' right to enforce arbitration agreements. *See, e.g., Adams v. AT & T Mobility, LLC*, 524 F. App'x 322, 324 (9th Cir. 2013) (unpublished); *see also Nelson v. Kunkle*, 8:19CV329, 2020 WL 1323899, *6 (D.

Neb. Mar. 20, 2020) (finding a nonsignatory could enforce an arbitration under Nebraska law for the same reasons).

Drazic acknowledges this Court's decision in *Arctic*. Drazic does not contest he signed the Agreement. Nor does he contest the Agreement allows corporate successors to enforce it. Drazic instead primarily argues NCR's motion must fail because, unlike the plaintiffs in *Arctic*, NCR provided "no evidence" with its original brief "to support its claim it is a corporate successor" to Retalix.

NCR has since provided that evidence including (1) a receipt from Maryland's Department of Assessments and Taxation confirming NCR filed and paid the filing fee for an articles of merger on December 30, 2015, (2) the signed Articles of Merger between Retalix and NCR declaring the merger effective December 31, 2015, and (3) the corporate-charter approval sheet. The Court allowed Drazic the opportunity to refute that evidence, which he did not. Thus, like in *Arctic*, the uncontested evidence in this case indicates NCR is Retalix's corporate successor entitled to enforce the Agreement.

Aside from the corporate-successor issue, Drazic questions whether the Agreement is valid and enforceable because, although he signed the Agreement, no Retalix representative did. This contention is similarly meritless. As NCR notes, this Court already considered this issue in a former case as well.

In *Chilson v. Retalix USA, Inc.*, 8:07CV101, 2007 WL 2904185 (D. Neb. Oct. 2, 2007), this Court considered an arbitration agreement between Retalix and a different employee. Like in this case, the employee signed the arbitration agreement but a Retalix representative did not. The Court concluded the arbitration agreement was not "invalid *per se* due to lack of" Retalix's signature. The Court explained "Nebraska law only requires that the arbitration agreement be in writing, not that it be in writing and signed." *Id.* at *3 (citing Neb. Rev. Stat. § 25-2602.01(a) (setting forth the requirements for a valid arbitration agreement); *see also* 9 U.S.C. § 2 (requiring an arbitration agreement to be in

8

writing). The Court further reasoned Nebraska law provides where "fewer than all of the proposed parties execute a document," the parties' intent, "determined by the language of the contract," decides who is liable. *Chilson*, 2007 WL 2904185, *2 (citing *Vowers & Sons, Inc. v. Strasheim*, 538 N.W.2d 756, 759 (Neb. 1995)).

This case compels the same conclusion. Under Nebraska law, parties' signatures "are not essential to establish a binding contract if manifestation of mutual assent is otherwise shown, unless there is a statute requiring a signature or an agreement by the parties that a contract shall not be binding until it is signed." *RSUI Indem. Co. v. Bacon*, 810 N.W.2d 666, 672 (Neb. 2011). "Even if neither party signs a contract, it may still be binding if there has been mutual assent." *Coffey v. Mann*, 585 N.W.2d 518, 523 (Neb. Ct. App. 1998).

Here, the Agreement (1) is in writing, (2) has no provision that it is not effective until signed, and (3) expresses repeatedly mutual assent between Drazic and "the Company" (that is, Retalix). Accordingly, the Court finds the Agreement is "a valid arbitration agreement" under Nebraska law. *Robinson*, 841 F.3d at 783 (quoting *Faber*, 367 F.3d at 1052).

### 2. The Scope of the Agreement

Next, the Court must determine "whether [this] particular dispute falls within the terms of" the Agreement. *Id.* at 784 (quoting *Faber*, 367 F.3d at 1052). The Court liberally construes "a valid arbitration clause, 'resolving any doubts in favor of arbitration.'" *Unison Co., Ltd. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015) (quoting *3M Co.*, 542 F.3d at 1199). Here, there is no doubt this dispute is covered by the Agreement.

As noted above, under the Agreement, "[t]he Company and [Drazic] mutually consent[ed]" to arbitrate all claims "arising out of [Drazic's] . . . assignment/employment, or the termination of [his] assignment/employment." The Agreement elaborated

> The claims covered by this Agreement include, but are not limited to: . . . claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability); . . . and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled "Claims Not Covered by the Agreement."

The Agreement excludes claims for workers compensation, unemployment compensation, and injunctive relief for unfair competition or disclosures of confidential information.

Here, Drazic's claims that NCR discriminated against him based on his age, sex, and national origin and retaliated against him, all in violation of federal and state law, fall squarely within the ambit of the Agreement. Drazic does not suggest otherwise.

Accordingly, the Court must grant NCR's motion to compel arbitration because "a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co.*, 542 F.3d at 1198.

### C. Stay or Dismiss

The Court may either "stay this action or dismiss it pending resolution of the arbitration[]." *McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1168 (8th Cir. 2017). "The FAA generally requires [the Court] to stay an action pending an arbitration, rather than to dismiss it," with some judicially-created exceptions. *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011); *see also* 9 U.S.C. § 3 (stating district courts "shall . . . stay the trial of the action until such arbitration has been had"). Following that general rule, the Court will stay this case pending arbitration.

Based on the foregoing,

IT IS ORDERED:

1. Defendant NCR Corporation's Motion to Dismiss and Compel Arbitration (Filing No. 5) is granted in part and denied in part.
    a. NCR's Motion to Compel Arbitration is granted.
    b. NCR's motion to stay this case pending arbitration is granted.
    c. NCR's motion is otherwise denied.
2. The parties are directed to proceed to arbitration pursuant to the Mutual Agreement to Arbitrate Claims.
3. This case is stayed pending arbitration.
4. The parties shall file a joint status report regarding the progress of arbitration proceedings every ninety days (90) beginning August 10, 2020.
5. The Clerk of Court is directed to set an initial Status Report Deadline of August 10, 2020.

Dated this 11th day of May 2020.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge